# 23-1246-cv

## United States Court of Appeals

### *for the*

## Second Circuit

JOHN DOE,

*Plaintiff-Appellant,*

– v. –

NEW YORK UNIVERSITY,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

JEFFREY METZLER
MAX WINOGRAD
PILLSBURY WINTHROP SHAW PITTMAN LLP
*Attorneys for Defendant-Appellee*
31 West 52nd Street
New York, New York 10019
(212) 858-1000

CP COUNSEL PRESS    (800) 4-APPEAL • (328907)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, New York University, a private non-governmental party to this proceeding, by and through its counsel, hereby submits its Corporate Disclosure Statement and states as follows: New York University does not have a parent corporation, nor is there any publicly held corporation that owns 10% or more of New York University's stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ..................................................... i

INTRODUCTION .................................................................................1

STATEMENT OF JURISDICTION.............................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................4

STATEMENT OF THE CASE..................................................................4

I.      Plaintiff's Relationship with Jane Roe ..............................................4

II.     Jane's Complaint to NYU......................................................9

III.    Plaintiff's Violations of the No Contact Order...............................10

IV.     NYU's Investigation.....................................................11

V.      NYU's Hearing.............................................................15

VI.     NYU's Hearing Decision and Plaintiff's Appeal ...........................17

VII.    Plaintiff's Post-Expulsion Complaints to NYU ...........................18

VIII.   The District Court Proceedings ..........................................18

SUMMARY OF THE ARGUMENT ...........................................................19

STANDARD OF REVIEW .....................................................................22

ARGUMENT ..................................................................................23

I.      The District Court Properly Held that NYU Did Not Discriminate
        Against Plaintiff Based on Gender ................................................23

        A.      There is No Evidence that NYU Acted with Discriminatory
                Intent................................................................23

        B.      Plaintiff Fails to Cast Articulable Doubt on the Accuracy of the
                Outcome of His Disciplinary Proceeding ............................29

II.     The District Court Properly Dismissed Plaintiff's Promissory Estoppel
        Claim..................................................................37

        A.      Plaintiff Did Not Reasonably Rely on the Alleged Statement............38

        B.      The Cause of Plaintiff's Injury was His Misconduct, Not His
                Reliance on the Alleged Statement .......................................41

CONCLUSION ..................................................................44

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bethel v. N.Y.C. Transit Auth.*,
   92 N.Y.2d 348 (1998) ...................................................................38

*Bey v. City of New York*,
   999 F.3d 157 (2d Cir. 2021) .......................................................22

*Bickerstaff v. Vassar Coll.*,
   196 F.3d 435 (2d Cir. 1999) .......................................................27

*Bonilla-Bukhari v. Berryhill*,
   357 F. Supp. 3d 341 (S.D.N.Y. 2019) ....................................31

*Carey v. Crescenzi*,
   923 F.2d 18 (2d Cir. 1991) ..........................................................30

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................16

*Chem. Bank v. City of Jamestown*,
   122 A.D.2d 530 (4th Dep't 1986)............................................40

*Chevron Corp. v. Donziger*,
   990 F.3d 191 (2d Cir. 2021) .......................................................37

*Condor Funding, LLC v. 176 Broadway Owners Corp.*,
   147 A.D.3d 409 (1st Dep't 2017) ............................................41

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
   47 F.3d 39 (2d Cir. 1995) ....................................................38, 41

*Doe v. Colgate Univ.*,
   760 F. App'x 22 (2d Cir. 2019) .........................................23, 32

*Doe v. Columbia Univ.*,
   831 F.3d 46 (2d Cir. 2016) ..........................................................22

iii

*Doe v. Oberlin Coll.*,
    60 F.4th 345 (6th Cir. 2023) .................................................................39

*Doe v. Oberlin Coll.*,
    963 F.3d 580 (6th Cir. 2020) ...............................................................29

*Doe v. Rollins Coll.*,
    77 F.4th 1340 (11th Cir. 2023) ............................................................24

*Doe v. Stonehill Coll., Inc.*,
    55 F.4th 302 (1st Cir. 2022)................................................27, 29, 34

*Doe v. Trs. of Bos. Coll.*,
    892 F.3d 67 (1st Cir. 2018)..................................................................28

*Doe v. Univ. of Denver*,
    952 F.3d 1182 (10th Cir. 2020) ...........................................................28

*Doe v. Valencia Coll.*,
    903 F.3d 1220 (11th Cir. 2018) ...........................................................34

*E.E.O.C. v. Bloomberg L.P.*,
    778 F. Supp. 2d 458 (S.D.N.Y. 2011) .................................................27

*Fed. Ins. Co. v United States*,
    882 F.3d 348 (2d Cir 2018) ...................................................................4

*Haidak v. Univ. of Mass.-Amherst*,
    933 F.3d 56 (1st Cir. 2019).........................................2, 24, 26, 28

*Henneberry v. Sumitomo Corp. of Am.*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006) ..........................................43, 44

*Horror Inc. v Miller*,
    15 F.4th 232 (2d Cir 2021) ..................................................................16

*In re Rezulin Prod. Liab. Litig.*,
    390 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................16

*Knight Sec., L.P. v. Fiduciary Tr. Co.*,
    5 A.D.3d 172 (1st Dep't 2004) .....................................................40, 43

*Lafler v. Cooper*,
566 U.S. 156 (2012).................................................................39

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995) ..................................................30

*London v. Hammel*,
32 A.D.2d 639 (2d Dep't 1969), *rev'd on other grounds* 27 N.Y.2d 620
(1970).........................................................................................40

*Long v. Marubeni Am. Corp.*,
No. 05 Civ. 0639(GEL), 2006 WL 1716878 (S.D.N.Y. June 20, 2006)...........42

*MacKay v. Paesano*,
No. 68232-14, 58 Misc. 3d 1222(A), 95 N.Y.S.3d 125 (Sup. Ct. Suffolk
Cnty. Feb. 6, 2018) .................................................................43, 44

*McAleenan v Mass. Bonding & Ins. Co.*,
232 N.Y. 199 (1921).................................................................40

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)...................................................................22

*Missouri v. Frye*,
566 U.S. 134 (2012).................................................................39

*Mitchell v. City of New York*,
841 F.3d 72 (2d Cir. 2016) ..................................................41

*Nelson v. Town of St. Johnsbury Selectboard*,
115 A.3d 423 (Vt. 2015)..........................................................41

*Oppman v. IRMC Holdings, Inc.*,
No. 600929/2006, 14 Misc.3d 1219(A), 836 N.Y.S.2d 494 (Sup. Ct. N.Y.
Cnty. Jan. 23, 2007) .................................................................40

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir 2021) ..................................................38

*Radwan v. Manuel*,
55 F.4th 101 (2d Cir. 2022) .........................................22, 23, 24

*Ripple's of Clearview, Inc. v. Le Havre Assocs.*,
  88 A.D.2d 120 (2d Dep't 1982) ...........................................................43

*Roe v. St. John's Univ.*,
  91 F.4th 643 (2d Cir. 2024) .......................................................*passim*

*Ruiz v. Cnty. of Rockland*,
  609 F.3d 486 (2d Cir. 2010) ...............................................................24

*Shukur v. Holder*,
  310 F. App'x. 479 (2d Cir. 2009) .......................................................29

*Silver v. Mohasco Corp.*,
  94 A.D.2d 820 (3d Dep't 1983) ..........................................................42

*Star Funding, Inc. v. Tire Ctrs., LLC*,
  717 F. App'x 38 (2d Cir. 2017) ..........................................................41

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952) ...............................................................................30

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ..................................................................26

*Wooley v. Stewart*,
  222 N.Y. 347 (1918) ............................................................................43

*Yusuf v. Vassar Coll.*,
  35 F.3d 709 (2d Cir. 1994) .............................................................23, 34

<u>Constitutions</u>

United States Constitution
  Amendment VI.....................................................................................39

<u>Statutes and Codes</u>

United States Code
  Title 28, section 1291..............................................................................4
  Title 28, section 1331..............................................................................3
  Title 28, section 1367(a) .........................................................................3

Education Amendments of 1972
    Title IX..................................................................................................*passim*

New York City Human Rights Law ........................................1, 19, 37, 44

Rules and Regulations

Federal Rules of Appellate Procedure
    Rule 28(a)(9)(A) ............................................................................30

Federal Rules of Civil Procedure
    Rule 56 ................................................................................13, 22

*Nondiscrimination on the Basis of Sex in Education Programs or Activities
    Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026, 30,577
    (May 19, 2020).....................................................................32

## INTRODUCTION

Plaintiff John Doe was expelled from New York University ("NYU" or the "University") after an extensive investigation and impartial hearing demonstrated that Plaintiff had violated the University's Sexual Misconduct, Relationship Violence and Stalking Policy (the "Policy"). Specifically, NYU found Plaintiff responsible for sexual harassment, sexual exploitation, stalking, and violating a no-contact order ("NCO"). The evidence considered by NYU's hearing officer included not only testimony by the complainant, Jane Roe ("Jane"), and Plaintiff, but also video and audio recordings of Plaintiff threatening Jane, photographs, and hundreds of threatening messages Plaintiff sent Jane. Plaintiff did not and does not dispute the authenticity of this evidence and, indeed, largely admitted to NYU the conduct for which he was found responsible.

Plaintiff's claims that the University violated Title IX of the Education Amendments of 1972 ("Title IX") and the New York City Human Rights Law ("NYCHRL"), were properly dismissed by the District Court because there is no "evidence that plausibly would support his claim that gender played a role, much less a discriminatory role" in NYU's actions. A-250.[1] Rather, NYU's disciplinary decision was based on the overwhelming evidence that Plaintiff violated the Policy and NCO.

---

[1] "A" refers to the Plaintiff-Appellant's Appendix. *See* Dkt. No. 73.

1

Plaintiff's central argument – that NYU treated Jane's complaint against him differently than the cross-complaint he filed against Jane – was thoroughly considered and rejected by the District Court because "Jane was the only [party] to file a formal complaint. Plaintiff was repeatedly told he could file a complaint, but he opted not to do so throughout the investigation, hearing, determination and appeal of Jane's complaint." A-248. When Plaintiff eventually filed a complaint against Jane, several months after he had been expelled, he was not similarly situated to Jane in all material respects because he was no longer a student at NYU. As the District Court correctly held, Plaintiff's argument that he did not file a complaint against Jane because he believed it would be handled after Jane's complaint against him, "cuts against his bias argument, as it tends to show 'that the university pursued [Jane's] case instead of his because [she] made the allegation first—not because [Plaintiff's gender] influenced the university.'" A-248-49 (quoting *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019)). Plaintiff fails to understand this point of law, continuing to argue on appeal that "[i]n any [dispute] between private parties, the first person to complain to authorities most often becomes the victim," App. Br. at 24,[2] without recognizing this cuts against his argument of gender discrimination.

---

[2] "App. Br." refers to Plaintiff-Appellant's Brief. *See* Dkt. No. 72.

The District Court also properly granted summary judgment to NYU on Plaintiff's promissory estoppel claim because even if, *arguendo*, Plaintiff had demonstrated that his advisor made a clear and unambiguous promise on which Plaintiff relied to his detriment (which he did not), Plaintiff failed to demonstrate that such reliance was reasonable. As the District Court found, "[i]t simply was not reasonable for Plaintiff to rely on statements made by [his advisor]" – who Plaintiff knew played no role in determining an appropriate sanction – "that were in direct conflict" with clear statements in NYU's Policy (which Plaintiff admitted to reviewing) and made by NYU's Title IX Coordinator to Plaintiff, that he faced the possibility of expulsion. A-253. Plaintiff's argument on appeal that "[t]he standard here is Mr. Doe's state of mind," is flatly wrong; the legal standard is whether his purported reliance was *objectively* reasonable. App. Br. at 39.

This Court should affirm the District Court's judgment in its entirety.

## STATEMENT OF JURISDICTION

Plaintiff filed this case in the United States District Court for the Southern District of New York. *See* A-268-69. The District Court had federal question jurisdiction over Plaintiff's Title IX claims, *see* 28 U.S.C. § 1331, and it exercised supplemental jurisdiction over Plaintiff's state and city law claims, *see* 28 U.S.C. § 1367(a).

The District Court entered Judgment disposing of all claims in the case on August 18, 2023. *See* A-255. Plaintiff timely filed a notice of appeal to this Court on September 8, 2023. *See* A-266. This Court has jurisdiction over the appeal. 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court properly granted summary judgment to NYU on Plaintiff's gender discrimination claims.

2. Whether the District Court properly granted summary judgment to NYU on Plaintiff's promissory estoppel claim.[3]

## STATEMENT OF THE CASE[4]

### I.  Plaintiff's Relationship with Jane Roe

Plaintiff and Jane Roe met as high school students in August 2015. A-129 ¶ 35. In 2016, Plaintiff enrolled as a freshman at the University of Connecticut and

---

[3] In his Statement of the Case, Plaintiff requests in passing that the case be remanded to "a different judge." *See* App. Br. at 3. However, Plaintiff makes no argument to support reassignment, which "is warranted only where the district court has demonstrated something akin to an inability or unwillingness to follow the Circuit's direction." *Fed. Ins. Co. v United States*, 882 F.3d 348, 373 (2d Cir 2018). The fact that Plaintiff lost his arguments before Judge Vyskocil does not justify "such a drastic remedy." *Id.*

[4] Unless otherwise indicated, there is no genuine dispute concerning the facts as recited in NYU's Statement of the Case and citations are to NYU's Rule 56.1 Statement in Further Support of Its Motion for Summary Judgment, which includes Plaintiff's Responses to NYU's Rule 56.1 Statement. *See generally* A-114-238.

Jane enrolled at NYU.  A-132 ¶ 42.  During their freshman year, Plaintiff visited Jane several times at NYU.  *Id.*  He applied to transfer to NYU and was accepted in May 2017.  A-133 ¶¶ 44, 46.  Contrary to Plaintiff's unsupported contention on appeal that Jane "lured" Plaintiff to NYU, *see* App. Br. at 18, Plaintiff has admitted that Jane had ended the relationship months before and tried to "prevent [him] from going to NYU."  A-133 ¶¶ 45-46.  Plaintiff chose to enroll at NYU anyway but did not tell Jane.  A-134 ¶ 48.  In the summer of 2017, Plaintiff changed his housing assignment to Jane's dorm and changed his major to Jane's major.  A-134-35 ¶¶ 49-50.

On August 30, 2017, Plaintiff informed Jane that he had transferred to NYU and would be living in Jane's dorm.  A-135 ¶ 51.  Initially, Jane "didn't want to talk to" Plaintiff and "just wanted [him] gone," but the two later resumed an intimate relationship.  A-136 ¶¶ 52-53.  Jane described Plaintiff as "manipulative" and "controlling" during this period.  A-136 ¶ 54.

Over the course of the fall 2017 semester, Plaintiff sent Jane messages in which he threatened to harm himself or contact Jane's parents if she did not do as he demanded.  A-136 ¶ 54; *see also* A-137-41 ¶¶ 55-58, 60-62.  Jane requested that he stop this behavior several times.  *See, e.g.*, A-136-37 ¶¶ 54, 55.  On October 30, 2017, Jane also discovered that Plaintiff had taken pictures of her while she was sleeping without her consent.  A-139 ¶ 59.  In at least some of the pictures, Jane's

5

breasts or stomach were partially exposed. *Id.* Plaintiff admitted in a message to Jane, "I SAW YOUR SHIRT WAS OFF . . . AND I WANTED TO PLEASURE MYSELF . . . AND I TOOK A PIC." *Id.*

By spring 2018, Plaintiff recognized that his relationship with Jane "had deteriorated" and she was "trying to call it off." A-141 ¶ 63. He admitted that he was "confused and angry" at this time. A-142 ¶ 64. During the spring semester, Plaintiff continued to attempt to control Jane through threats of self-harm or by contacting Jane's parents, who he did in fact contact several times. *See* A-144-46 ¶¶ 71-74; A-150 ¶ 86. Plaintiff's behavior also escalated as Jane consistently asked him to stop contacting her and tried to remove herself from the relationship. Examples of Plaintiff's conduct during this period include, but are not limited to:

- On March 10, 2018, Plaintiff got "angry" and stood outside Jane's dorm room door, insisting that she speak with him about comments she had made that evening. He refused to leave and when a friend came to pick Jane up, Plaintiff followed them. A-142-43 ¶¶ 65-68.

- On April 2, 2018, Plaintiff demanded to see Jane at 4:00 am. When she did not meet him, he sent her a barrage of texts, calling her an "ABSOLUTE BITCH" and threatening that if she did not respond in five minutes, "Your parents will know everything / Press charges against me / I don't give a fuck." A-147 ¶¶ 75-77.

6

- On April 8, 2018, Plaintiff "confronted" Jane in person about the fact that she continued to spend time with their mutual friends. A-149-50 ¶¶ 80-84. In a video of this encounter that NYU would later review as part of its Title IX proceedings, Plaintiff tells Jane, "I'm not leaving you alone unless you promise to talk to me . . . You have to choose, you're either gonna talk to me or you're gonna—," at which point, Jane interrupted, crying. A-149-50 ¶ 83. Later that day, Plaintiff left Jane a voicemail reiterating, "So again I'm telling you, if this is how it's going to go down, and you're not going to talk to me, then be warned I'm not going to be an easy person to deal with." A-150 ¶ 85.

- On April 9, 2018, Plaintiff messaged Jane dozens of times without her responding. She eventually told him, "don't contact me again." He also left her a voicemail stating, "I'm not done talking . . . There's a lot more you have to hear from me . . . Won't go ballistic. Or maybe I already am." A-151 ¶¶ 87-88.

- On April 19, 2018, Plaintiff left Jane three voicemails telling her to respond to him, the last of which stated that if she did not respond in ten minutes, he would "have to contact you by other means. . . . I'm giving you one last opportunity to do so. Yeah, you really need to respond. You

really need to respond." A-153 ¶ 94. He also sent messages asking Jane to contact him. *Id.*

- On April 21, 2018, Plaintiff, as he put it, "sort of lost it." *See* A-154 ¶ 95. He texted Jane at 12:24 AM, "[I]f you thought what I did earlier on would cause problems / You're in for a real hell of a ride / I'll give you till 1 / After that / It'll go bad / I want a response on WhatsApp in 9 minutes." A-155 ¶ 97.

- Jane eventually agreed to meet Plaintiff, who recorded part of their encounter. NYU reviewed this recording in connection with its Title IX proceedings. The video shows Jane crying on the floor while Plaintiff speaks into the camera about how Jane was "supposed to stay away from me" but was

  > [n]ot doing such a great job of that, are we now? . . . She laughed when you guys were there and I was hurt, right? She laughed. And now she's crying. Where's the laughter? It's a high-stress situation. She's not laughing. Why isn't she laughing? She should be laughing, right? Laugh, right? Laugh. No, she won't laugh now. She won't laugh now. She'll just cry. She pities her. Always pities her.

  A-157 ¶ 103.

- After the two students parted company, Plaintiff resumed texting Jane at 8:29 AM. A-143 ¶ 104.

8

- At 9:07 AM, Plaintiff sent messages in which he attempted to blackmail Jane, threatening to "ruin" her friendships and relationship with her parents. He sent Jane videos and threatened to send them to "everyone." He sent her a text stating, "I lost everything / I'm giving you the opportunity not to / But I blooody [sic] well will," followed by almost fifty more consecutive messages. A-159-60 ¶¶ 106-08.

- Beginning around 10:23 AM, Plaintiff sent Jane over 100 unanswered messages, including messages in which he threatened self-harm and suicide. A-161 ¶ 110.

- At 11:36 AM, Jane told Plaintiff to stop calling her, making it clear that "I don't want to be contacted." Plaintiff responded with more threats to inform Jane's friends and family about their relationship. A-162 ¶¶ 111-12.

- During that afternoon of April 21, 2018, Plaintiff repeatedly called Jane and left several voicemails. He continued to blackmail her, sending photos of their relationship, later admitting "that he 'was trying to suggest to her' that he 'might send them' to her friends or family." A-162-63 ¶ 113.

## II. Jane's Complaint to NYU

Following this barrage from Plaintiff, at 6:08 pm on April 21, 2018, Jane filed a complaint against Plaintiff with NYU's Department of Public Safety ("DPS"). A-

9

163 ¶ 114.  On April 22, 2018, Plaintiff sent Jane several messages and left several voicemails, and she told him to stop contacting her.  A-163 ¶ 115.  Plaintiff received a call from DPS that evening and left more voicemails for Jane, begging her to respond.  A-164 ¶ 116.

### III.  <u>Plaintiff's Violations of the No Contact Order</u>

On April 22, 2018, NYU issued a mutual NCO to Plaintiff and Jane, directing each student "not to initiate or facilitate any form of communication or interaction" with the other, "including those made through virtual means (text messages, e-mail, Facebook[,] Twitter, other social networking websites, etc.) or by 3rd parties on your behalf."  A-164 ¶ 117.

Less than thirty minutes after receiving the NCO, Plaintiff sent a message to Jane.  A-164-65 ¶ 118.  He proceeded to violate the NCO several more times in the days thereafter, including a confrontation in a student lounge on April 29, 2018, during which Plaintiff "just lost it. I absolutely lost it . . . I couldn't take it. I just – I interacted with her."  A-166 ¶ 123.  As Plaintiff told NYU during the hearing, "I'm not going to even try and deny it. I violated the no-contact directive there directly . . . I didn't know how to deal with it. I honestly still don't know how to deal with it."  *Id.*; *see also* A-165-66 ¶¶ 120-21, 123-24.

An NCO violation is unusual and taken very seriously by the University.  A-167 ¶ 125.

**IV.** **NYU's Investigation**

On April 30, 2018, NYU's Title IX Coordinator, Mary Signor, met with Jane to conduct an initial assessment of her complaint. A-167 ¶¶ 126-27; *see* A-128 ¶ 30. Signor told Jane that either NYU could conduct an investigation, or she could attempt to resolve the matter through the University's Administrative Resolution process. A-167 ¶ 127.

Later that day, Signor and Colleen Maeder, the Assistant Director of the Office of Student Conduct, met with Plaintiff. A-168 ¶ 128; *see* A-128 ¶ 33. Signor and Maeder explained to Plaintiff his rights under the Policy and NYU's Reporting, Investigating, and Resolving Sexual Misconduct, Relationship Violence, and Stalking - Complaints Against Students (the "Procedures"). A-168 ¶¶ 128-29; *see* A-116 ¶ 1; A-118 ¶ 7. This included an explanation to Plaintiff that he could file a cross complaint against Jane, but Plaintiff declined to do so. *See* A-169 ¶ 131.[5] Signor and Maeder also explained to Plaintiff that the range of sanctions for violating the Policy included expulsion. A-169 ¶ 132.

---

[5] Plaintiff attempts to create a material dispute of fact by claiming that the reason he declined to file a cross-complaint was that Signor told him it would be handled at the end of any proceedings against him. A-169 ¶ 131. Setting aside the fact that it was Plaintiff himself who wrote that he did not file a cross complaint because he "did not want to distress Jane," it remains undisputed that Plaintiff was told he could file a cross complaint and declined to do so. *Id.*; *see also* A-170 ¶ 133 (Plaintiff told NYU that he wanted to attempt an administrative resolution of the matter).

On May 2, 2018, Jane emailed Signor to report that Plaintiff had again violated the NCO by following her in Washington Square Park earlier that day. A-171 ¶ 135. She explained, "I am starting to feel increasingly stressed and anxious because of this. Is there anything you can do to make him stop doing this?" In the same email, Jane told Signor that she did not "think the issue can be taken care of properly via the [administrative] resolution method" given Plaintiff's NCO violations and the fact that "[Plaintiff] was following me . . . today." A-171 ¶¶ 135-36.

On May 17, 2018, NYU investigators Samuel Hodge and Jacqueline Cornell interviewed Jane. A-174 ¶ 144; *see* A-128 ¶ 31. Jane described her relationship with Plaintiff and the conduct by Plaintiff that prompted her to file a complaint. A-174 ¶ 144.

On May 21, 2018, Plaintiff emailed Signor to ask for more information about the allegations against him and to ask whether Signor could discuss the case with his mother. A-174 ¶ 145. Signor responded the next day with a description of Jane's allegations. A-174-75 ¶ 146. She also spoke with Plaintiff's mother and told her that Plaintiff could be expelled from NYU. A-175 ¶ 147.

On June 1, 2018, Hodge told Plaintiff that he was "welcome to have an advisor of choice" attend their meeting and also offered to connect Plaintiff with "a Respondent Facilitator through NYU." A-176-77 ¶¶ 150-52; *see also* A-129 ¶ 34

12

(A Respondent Facilitator provides "[g]uidance related to what happens in [Title IX proceedings] in terms of the procedures, the steps, answering questions based upon information [the respondent] has received to help him make sure that he understands and gets his questions answered."). Plaintiff understood that his advisor "could be anyone [he] wanted" other than a potential witness. A-176-77 ¶ 151. Plaintiff requested a facilitator from NYU, and on June 19, 2018, Signor introduced Plaintiff via email to Allen McFarlane. A-177-78 ¶¶ 152-54; *see also* A-129 ¶ 34. Plaintiff claims (and McFarlane denies) that McFarlane told Plaintiff during this meeting that he would not be expelled and the "worst case scenario" would be a one semester suspension (the "Alleged Statement"). *See* A-177-78 ¶¶ 152-56.[6]

On July 10, 2018, Plaintiff and McFarlane met with Hodge and another NYU Title IX Investigator, Lauren Stabile. A-178 ¶ 157; *see also* A-128 ¶ 31. During the interview, Plaintiff admitted to violating the NCO. A-179 ¶ 159. Plaintiff admits that Hodge and Stabile reiterated during this interview that "[he] could file a cross complaint," but that he chose not to do so. A-180 ¶ 162.

---

[6] While there is significant evidence corroborating McFarlane's denial, *see e.g.*, A-169 ¶ 132; A-184-85 ¶ 178; A-192-93 ¶¶ 197-99 (contemporaneous statements by Plaintiff demonstrating his understanding that he could be expelled without any mention of the Alleged Statement), both NYU's motion for summary judgment and the District Court opinion treat Plaintiff's allegation as true for purposes of the motion in accordance with Federal Rule of Civil Procedure 56.

On July 13, 2018, Hodge and Stabile emailed Plaintiff to remind him to submit whatever evidence he wanted them to consider by July 20, 2018. A-180-81 ¶ 163. Plaintiff did not respond until July 20, 2018, when he asked for an extension until July 23, 2018, which was granted. A-181 ¶ 164. Plaintiff missed this deadline as well and did not submit evidence until August 10, 2018. NYU nevertheless included Plaintiff's submission in the Report. A-183 ¶ 170.

On or around August 22, 2018, Plaintiff travelled to Australia for a semester abroad. A-183 ¶ 173.

During August and September 2018, Hodge and Stabile interviewed three third-party witnesses, two of whom were identified by Jane and a third identified by Plaintiff. A-183 ¶ 174.

On October 2, 2018, NYU sent Plaintiff and Jane a draft of the investigative report (the "Draft Report"), which included a summary of Jane's allegations, a copy of the applicable Policies, a full write-up of the interviews NYU had conducted, and all of the evidence that had been submitted up to that point. A-184 ¶ 175. The investigators asked Jane and Plaintiff "to identify or provide any additional information or witnesses that you believe should be considered." *Id.*; *see also* A-124 ¶ 19. McFarlane advised Plaintiff that "[t]his is the opportunity to share items that you believe are important," to which Plaintiff responded that he had "included

14

all the evidence that [he] found pertinent." A-186 ¶ 182. Jane and Plaintiff both submitted responses on October 22, 2018. A-186-87 ¶ 183.

On October 23, 2018, Hodge and Stabile finalized the investigative report (the "Report") and sent it to Plaintiff, Jane, and NYU's Office of Student Conduct to schedule a hearing. A-189 ¶ 189.

## V.  **NYU's Hearing**

The Hearing was held on December 10, 2018, at 4:00pm in New York, which was December 11, 2018, at 8:00am in Sydney, where Plaintiff was studying. A-195 ¶ 206. The participants included Plaintiff and his advisor in Sydney, and Jane, Hodge, Maeder, McFarlane, and the Adjudicator, Craig Jolley, in New York. A-195 ¶ 207; *see also* A-128 ¶ 32. NYU made an audio recording of the Hearing from New York. *See* A-195 ¶¶ 206-07.

During the Hearing, Plaintiff largely admitted to the misconduct for which NYU found him responsible. For example, Plaintiff admitted during the Hearing that he took pictures of Jane's "cleavage" and bare stomach without her consent, A-198 ¶ 218; by March 2018 his relationship with Jane "had deteriorated" and she was "trying to call it off," A-199 ¶ 219, *see id.* ¶ 221; on April 21, 2018 (the day Jane reported his conduct to NYU), he "sort of lost it" and "couldn't control it," A-200 ¶ 223; and that he violated the NCO on several occasions, A-201-02 ¶¶ 227-29; *see*

*generally* A-197-202 ¶¶ 214-29.[7]  Furthermore, NYU considered hundreds of pages of electronic messages Plaintiff sent to Jane, photographs, videos, and voicemails that Jane submitted as part of the Investigation which document Plaintiff's sexual harassment, exploitation, stalking, and violations of the NCO.  *See* SA-48-256 (Investigation Summary Report).  Plaintiff did not dispute that this evidence was authentic.  A-189-90 ¶¶ 189-90.

To the extent there were technical difficulties during the Hearing, NYU took steps to address them immediately, such as repeating questions and page numbers and/or clarifying testimony.  A-196 ¶ 212.  At no point did Plaintiff request that the hearing be adjourned because of technical difficulties.  A-203 ¶ 231.  When the Hearing ended, Plaintiff thanked everyone for "making this a fair hearing . . . and ma[king] sure that I . . . had a fair opportunity at telling my story." *Id.* ¶ 232.

---

[7] Plaintiff's Rule 56.1 Response tries to explain or rationalize some of the admissions Plaintiff made during the Hearing, but the Hearing transcript is part of the record below, *see Doe v. New York Univ.*, No. 1:20-cv-01343-MKV (S.D.N.Y.), Dkt. ("D. Ct. Dkt.") Nos. 88-20, 94-4 (corrected version); SA-360-692, and establishes Plaintiff's admissions beyond any *genuine* dispute.  *See e.g. Horror Inc. v Miller*, 15 F.4th 232, 240 (2d Cir 2021) ("When a motion for summary judgment is supported by documentary and testimonial evidence, the nonmoving party may not rest upon mere allegations or denials—rather, he must present sufficient probative evidence to establish a genuine issue of material fact." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))); *In re Rezulin Prod. Liab. Litig.*, 390 F. Supp. 2d 319, 323 n.5 (S.D.N.Y. 2005) ("[M]erely because one party denies a properly-supported assertion in the other's Local Rule 56.1 Statement does not create an issue of fact if the cited evidence reveals no genuine factual dispute." (alteration added)).

Plaintiff also told his counselor in Sydney that "he felt confident that he stated his case to the best of his ability" and felt "quite positive" about the Hearing. *Id.* ¶¶ 233-34.

## VI. NYU's Hearing Decision and Plaintiff's Appeal

On December 18, 2018, Jolley issued a written decision (the "Decision") in which he found there was not "sufficient evidence to support a finding of sexual assault," but that Plaintiff was responsible for sexual harassment, stalking, sexual exploitation, and violation of the NCO. A-204-06 ¶¶ 235-41. Jolley found there was "overwhelming evidence that [Plaintiff] has engaged in an extended pattern of conduct that would cause a reasonable person in the position of the Complainant to experience fear for their safety, substantial emotional distress, significant mental suffering, and anguish." A-204 ¶ 235. Given "the totality of circumstances, the threatening and excessive nature of the Respondent's conduct, the repeated and blatant disregard of the University's no-contact directive, and most notably, the unsettling and egregious pattern of stalking behaviors," Jolley sanctioned Plaintiff with expulsion and a transcript notation. A-206 ¶ 241.

On January 25, 2019, Plaintiff appealed the Decision based on alleged (1) new evidence, (2) procedural error; and (3) disproportionate sanction. A-208-09 ¶¶ 248-52; *see also* A-127 ¶ 28 (identifying the grounds for appeal under NYU's Procedures).

The "new evidence" consisted mainly of affidavits from friends and family and messages, which Plaintiff claimed were not accessible to him in Australia. A-208 ¶ 249. Plaintiff did not claim that technical difficulties impaired his ability to participate in the Hearing or caused him to answer any questions incorrectly; in fact, his appeal did not mention any technical difficulties. A-209 ¶ 251.

On February 26, 2019, NYU's Appeal Panel denied Plaintiff's appeal. A-211 ¶ 256.

## VII.  Plaintiff's Post-Expulsion Complaints to NYU

In the months after he was expelled, Plaintiff filed four complaints with NYU alleging misconduct by other students, including Jane. A-214-15 ¶¶ 265, 267. Three complaints were against friends of Jane's, including one male student who testified as a witness in Plaintiff's misconduct proceeding and one who submitted a statement as part of Jane's response to Plaintiff's appeal. A-215 ¶ 267.

NYU did not accept his complaints because Plaintiff had been expelled and was no longer a student at NYU. A-214-15 ¶ 266.

## VIII.  The District Court Proceedings

Plaintiff filed a Complaint against NYU in the United States District Court for the Southern District of New York on February 18, 2020. *See* A-269. NYU moved to dismiss the Complaint, *see* A-272, and Plaintiff filed an Amended Complaint. *See* A-1-66.

18

The Amended Complaint alleges two claims for violation of Title IX, a state law promissory estoppel claim, and a claim for violation of the NYCHRL. A-53-65 ¶¶ 451-551.

On August 17, 2023, the District Court issued an Opinion and Order Granting Defendant's Motion for Summary Judgment in its entirety. A-239-54. The court granted NYU summary judgment on Plaintiff's Title IX claims because "[a]t bottom, Plaintiff has pointed to no evidence that plausibly would support his claim that gender played a role, much less a discriminatory role" in NYU's actions. A-250. The court held Plaintiff's New York City Human Rights Law claim was "indistinguishable from" his Title IX claims and failed for the same reasons. A-251. Finally, the court dismissed Plaintiff's promissory estoppel claim because "[e]ven assuming McFarlane made a clear and unambiguous promise, and that Plaintiff was injured because of his reliance on that promise (both dubious propositions), Plaintiff[] . . . cannot demonstrate that his reliance was reasonable." A-252.

Plaintiff timely appealed to this Court. A-266.

## SUMMARY OF THE ARGUMENT

Plaintiff's claims under Title IX and the NYCHRL fail because there is no evidence that gender was a motivating factor, or indeed played any role, in NYU's decision to investigate or discipline Plaintiff. Plaintiff failed to introduce any direct or circumstantial evidence that NYU acted with discriminatory intent or treated him

less well than Jane. Further, Plaintiff fails to cast articulable doubt on NYU's disciplinary decision, which was supported by overwhelming evidence that Plaintiff violated the Policy and NCO.

Plaintiff's argument that NYU treated him differently than Jane fails because it is undisputed that Plaintiff declined to file a complaint against Jane while they were both students at NYU. When Plaintiff attempted to file a complaint with NYU several months after he was expelled, he and Jane were not similarly situated at that time because he was no longer a student. Plaintiff's claim that he did not file a complaint against Jane earlier because NYU told him it would not be handled until the proceedings against him had concluded is, even if true, at best evidence of bias in favor of students who complain first, not gender discrimination.

Plaintiff's reliance on cherry-picked examples of some female students who were disciplined less severely than some male students is similarly unavailing. The document on which Plaintiff relies for this argument includes only general categories of misconduct (*e.g.*, Relationship Violence or Sexual Harassment) which encompass a wide range of actions that properly warrant different sanctions. Plaintiff does not and cannot account for the obvious, non-discriminatory explanation for the disparity in sanctions reflected in the document – *i.e.*, that the different students' actions were materially different.

Plaintiff's erroneous outcome claim fails for the additional reason that he failed to cast articulable doubt on the outcome of NYU's misconduct proceeding. NYU's disciplinary decision was based on substantial, undisputed evidence – including Plaintiff's own admissions during the Investigation and Hearing, video and audio recordings, photographs, and hundreds of messages from Plaintiff to Jane – that Plaintiff violated NYU's Policy. The alleged "procedural errors" cited by Plaintiff are not only unsupported by the Record,[8] but, even if true, would not raise doubts as to the merits of NYU's decision.

Finally, the District Court properly granted summary judgment to NYU on Plaintiff's promissory estoppel claim because Plaintiff cannot show reasonable reliance on the Alleged Statement. Plaintiff knew, based on NYU's written Policy and statements made to Plaintiff by NYU's Title IX Coordinator and Investigators, that he could be expelled as a result of NYU's disciplinary proceedings. Plaintiff also knew that his advisor played no role in adjudicating his case or determining an appropriate sanction. Given these undisputed facts, the District Court correctly held that any reliance on McFarlane's alleged prediction regarding Plaintiff's sanction was not reasonable as a matter of law. Moreover, Plaintiff's promissory estoppel claim fails because he cannot show that his injury – his expulsion from NYU – was

---

[8] References to the "Record" are to the parties' submissions to the District Court in connection with NYU's Motion for Summary Judgment. *See* D. Ct. Dkt. Nos. 88, 98, 111, 113.

caused by his supposed reliance on the Alleged Statement, rather than the fact that there was overwhelming evidence that he committed multiple violations of the Policy and NCO.

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021) (alteration added) (citation omitted). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

Plaintiff's Title IX claims are also governed by the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Doe v. Columbia Univ.*, 831 F.3d 46, 55-56 (2d Cir. 2016). Under that framework, a plaintiff must "make out a *prima facie* case" showing that "plaintiff is a member of a protected class, [he] was qualified for [his] position, [he] suffered an adverse action, and the facts imply a discriminatory intent." *Radwan v. Manuel*, 55 F.4th 101, 130 (2d Cir. 2022) (alterations added) (citation omitted). The burden then "shifts to the defendant to proffer a legitimate non-discriminatory reason for the adverse action, and then finally, the plaintiff may rebut this reason by demonstrating pretext." *Id.*

(citation omitted). "In other words, the plaintiff must demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the adverse action, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against [him]." *Id.* (alteration added) (internal quotation marks and citation omitted).

## ARGUMENT

### I.  The District Court Properly Held that NYU Did Not Discriminate Against Plaintiff Based on Gender

### A.  There is No Evidence that NYU Acted with Discriminatory Intent

"Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Roe v. St. John's Univ.*, 91 F.4th 643, 652 (2d Cir. 2024) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994));[9] *accord Doe v. Colgate Univ.*, 760 F. App'x 22, 30 (2d Cir. 2019) (summary order) (affirming summary judgment that student failed to establish gender bias). Plaintiff must show that the university acted with "discriminatory intent." *St. John's Univ.*, 91 F.4th at 652; *Radwan*, 55 F.4th at 130; A-247. "[D]iscriminatory intent

---

[9]  The Second Circuit has not yet decided whether Title IX requires proof of "but-for" causation. *See Radwan*, 55 F.4th at 131-32 (explaining recent Supreme Court cases have called into question the "motivating factor" standard but declining to decide whether the higher "but-for" standard applies to Title IX claims). However, this Court need not decide the issue here because Plaintiff has not demonstrated that gender bias was either a motivating *or* a "but-for" factor in NYU's decision to discipline.

can be shown by either direct evidence of discriminatory animus or circumstantial evidence of such animus." A-247 (quoting *Radwan*, 55 F.4th at 132). Plaintiff failed to show either direct or circumstantial evidence of discriminatory animus.

Plaintiff's principal argument in support of his Title IX claim is that NYU treated him less favorably than Jane. But as the District Court properly held, Plaintiff and Jane were not similarly situated. A-247-49; *see St. John's Univ.*, 91 F.4th at 656 ("Roe's allegations regarding SJU's different treatment of Roe and Doe are not persuasive because Roe and Doe were not similarly situated."); *see Radwan*, 55 F.4th at 132 ("[T]he comparator must be similarly situated to the plaintiff 'in all material respects.'" (alteration added) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010))).

First, Plaintiff and Jane were not similarly situated when they were both students at NYU because Jane filed a complaint with the University and Plaintiff did not. A-248; *see Haidak*, 933 F.3d at 74 (explaining plaintiff and other party "were not similarly situated as complainants" because the woman "affirmatively contacted the university to report her charges and to seek relief" while plaintiff "demurred" when told he could initiate a charge); *Doe v. Rollins Coll.*, 77 F.4th 1340, 1352 (11th Cir. 2023) (agreeing with the district court's determination that plaintiff and complainant were not similarly situated in part because plaintiff did not lodge a complaint and complainant did).

24

Jane filed a complaint against Plaintiff with NYU on April 21, 2018. A-163 ¶ 114. She subsequently told NYU that she did not "think the issue can be taken care of properly via the [administrative] resolution method" given Plaintiff's violations of the NCO. A-171 ¶ 136. By contrast, Plaintiff *declined* to file a cross-complaint and told NYU that he wanted to attempt an administrative resolution of the matter. A-169 ¶ 131; A-170 ¶ 133; A-180 ¶ 162. In short, NYU investigated Plaintiff and not Jane while they were both students because Jane filed a complaint and Plaintiff did not.

Second, Plaintiff and Jane also were not similarly situated when Plaintiff attempted to file a complaint against Jane several months after he was expelled because he was no longer a student at NYU. NYU's refusal to investigate Jane at this point shows only that the University treats complaints made by expelled students differently than complaints made by current students. *See* A-214-15 ¶ 266 ("NYU did not accept Plaintiff's complaint because NYU has 'never accepted a complaint from an expelled student against a current student.'").[10]

Plaintiff's claim that he would have filed a complaint against Jane sooner if Signor had not told him his complaint would be considered only after Jane's complaint was resolved, even if true, is not evidence of gender bias. As the District

---

[10] NYU also declined to accept complaints that Plaintiff filed after his expulsion against male students who had provided testimony in the proceedings against him. A-215 ¶ 267.

Court and other Circuits have held, "[s]imply 'showing that the university had an unwritten race-to-the-dean's-office policy . . . is not enough to support an inference of discrimination on the basis of sex.'" A-214 (quoting *Haidak*, 933 F.3d at 74). If anything, Plaintiff's appellate brief concedes that Jane's complaint was treated differently because she complained first, *not* because of gender. *See* App. Br. at 24 (arguing that "[i]n any despite [sic] between private parties, the first person to complain to authorities most often becomes the victim. . . . In this case . . . the first-to-complain [was] treated as a victim, and her former lover expelled."). Therefore, "[a]t most, [Plaintiff] has alleged that the university pursued [Jane's] case instead of his because [Jane] made the allegation first – <u>not</u> because [Plaintiff's] sex influenced the university." *See Haidak*, 933 F.3d at 74 (alterations added).

Finally, there is no merit to Plaintiff's conclusory claim that "[t]he statistical evidence about the discipline imposed in Title IX cases raises issues of material fact." App. Br. at 38. The raw data on which Plaintiff (presumably)[11] relies – is *not* "statistical evidence" but rather a simple spreadsheet that lists the outcomes of disciplinary proceedings. A-217 ¶ 274; D. Ct. Dkt. No. 98-4; *see Weinstock v. Columbia Univ.*, 224 F.3d 33, 46 (2d Cir. 2000) ("[R]aw data purportedly describing a pattern of [discrimination] . . . is little but an unsupported hypothesis providing no

---

[11] While Appellant's brief does not include any citations to the Record, NYU assumes Plaintiff is referring to the spreadsheet cited at A-217-18 ¶¶ 274-75.

foundation for the assertion that there was discrimination . . . ." (alterations added));
*see E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 470 (S.D.N.Y. 2011) (holding
plaintiff failed to make out *prima facie* case where it failed to produce competent
statistical evidence).

Moreover, the document includes only general categories of Policy violations
(*e.g.*, Relationship Violence or Sexual Harassment) that encompass a broad range of
misconduct. For example, Sexual Harassment includes conduct ranging from *quid
pro quo* sexual advances to lewd jokes. SA-28-29. Thus, even if Plaintiff had
presented admissible evidence of a statistical disparity between the sanctions
imposed on men and women found responsible with each category (which he did
not), this would be insufficient to infer discriminatory animus by NYU because
Plaintiff cannot account for the seriousness of the offense within each category.

As the District Court held, "it is easy to cherry-pick out of a single broad
category one female student and one male student who received different
sanctions. . . . Plaintiff 'makes *no effort* to account for nondiscriminatory
explanations of the disparity' in sanctions, such as the different facts of specific
cases." A-249 (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir.
1999)); *see Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 332-33 (1st Cir. 2022)
(rejecting Title IX claim where plaintiff alleged that no female student had been
"disciplined, much less expelled, for alleged sexual misconduct" because "'[i]t is

unreasonable to draw such an inference [of sex bias] from this information rather than recognize that other non-biased reasons may support the gender makeup of the sexual misconduct cases' at the college" (alterations in original) (quoting *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 92 (1st Cir. 2018))); *Haidak*, 933 F.3d at 75 (rejecting inference of gender discrimination based on statistical disparities because "the data fail to address an array of alternative explanations. These trends could reflect, for example, that male students on average had lengthier disciplinary histories or committed more serious assaults . . . ."); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1193-94 (10th Cir. 2020) ("When the statistical evidence does nothing to eliminate these obvious, alternative explanations for the disparity, an inference that the disparity arises from gender bias on the part of the school is not reasonable.").

In sum, Plaintiff is unable to point to *any* individuals of different genders who were otherwise similarly situated and treated differently by NYU. Plaintiff provides no other evidence, either direct or circumstantial, suggesting any discriminatory intent by NYU.[12] The District Court therefore properly concluded that Plaintiff had pointed to "no evidence that plausibly would support his claim that gender played a

---

[12] The District Court also rejected Plaintiff's argument that a presentation titled "The Art of working with Sexual Misconduct Respondents," delivered by the Assistant Director of Student Conduct at NYU, was evidence of discriminatory intent. A-250; *see* A-237-38 ¶¶ 341-43. Plaintiff has abandoned this argument on appeal, *see* App. Br., but, regardless, the District Court correctly determined that this presentation fails to show any discriminatory intent. *See* A-250.

role, much less a discriminatory role" in NYU's actions, and "NYU is entitled to summary judgment on the Title IX claim." A-250.

## B. Plaintiff Fails to Cast Articulable Doubt on the Accuracy of the Outcome of His Disciplinary Proceeding

Plaintiff also argues that NYU committed procedural errors during the Investigation and Hearing. *See* App. Br. at 34-37. Not only is there no support in the Record for this argument, but even if there were, the "procedural errors" Plaintiff alleges would not be grounds for reversal on his Title IX claims. *See St. John's Univ.*, 91 F.4th at 654 ("[T]he allegation that a university conducted its disciplinary proceedings in a less-than-flawless manner does not automatically permit a factfinder to reasonably infer that a university has committed sex discrimination. . . . [A]lleged 'procedural errors are not inevitably a sign of sex bias.'" (alterations added) (quoting *Stonehill Coll.*, 55 F.4th at 334)); *id.* at 656 ("Roe's allegations regarding SJU's treatment of Doe's accusations against him do not give us 'grave' doubts as to 'the merits of the decision itself' . . . .'" (quoting *Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020))).

### 1. Plaintiff waived his argument regarding alleged procedural errors by failing to cite Record evidence.

As an initial matter, Plaintiff fails to cite any Record evidence for the supposed procedural errors discussed in his appellate brief. *See e.g.*, App. Br. at 34-37. This Court should therefore treat the argument as waived and disregard it. *See Shukur v.*

29

*Holder*, 310 F. App'x. 479, 481 (2d Cir. 2009) ("Petitioners seeking judicial review have a duty to present their arguments clearly and to support them with citations to relevant legal authority and record evidence. . . . Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." (citing Fed. R. App. P. 28(a)(9)(A))); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in legal memoranda . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation marks and citation omitted)); *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (bald assertions, completely unsupported by evidence, are not sufficient to overcome summary judgment).

## 2.  The Record contradicts Plaintiff's argument.

Further, to the extent there is evidence relating to the supposed "procedural errors" Plaintiff complains about, the Record contradicts Plaintiff's argument.  For example:

- Plaintiff claims on appeal that "[w]hen he complained about the connectivity at his hearing and requested adjournment, that request was . . . denied."[13]  App. Br. at 37; *see also id.* at 8, 13, 29.  But as the

---

[13] Plaintiff waived this argument by failing to mention any technical difficulties during the Hearing in his appeal to NYU.  A-209 ¶ 251; *see United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general

30

Hearing transcript conclusively demonstrates, Plaintiff never requested that the Hearing be adjourned. *See* SA-360-692; *see also* A-203 ¶ 231 ("Plaintiff never requested that the Hearing be adjourned because of technical difficulties."). Furthermore, when technical issues arose, "NYU would repeat page numbers, questions, and/or ensure that anything Plaintiff or Jane could not hear was repeated." A-196 ¶ 212. Plaintiff was unable at his deposition to identify a single question from the Hearing he answered incorrectly as a result of alleged technical difficulties. A-202 ¶ 230. In Plaintiff's own words, NYU conducted a "fair hearing" in which Plaintiff "had a fair opportunity at telling [his] story." A-203 ¶ 232.

- Plaintiff claims on appeal that "[h]e had limited access to the report, photos and other evidence marshalled against him while in Australia." App. Br. at 28-29 (citing A-180-81 ¶¶ 163-64). However, the portions of the Record cited by Plaintiff do not support his assertion as they relate to Plaintiff's submission of evidence to the Investigators in July 2018 (before he even

---

rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *see also Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 352 (S.D.N.Y. 2019) ("Regularly permitting unsuccessful claimants to raise . . . challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would 'encourage the practice of "sandbagging" . . . .'") (citation omitted)).

left for Australia, *see* A-183 ¶ 173), not his access to the report, photos, or other evidence while in Australia, *see* A-180-81 ¶¶ 163-64. Furthermore, the Record shows that Plaintiff corresponded at length about the Draft Report and other evidence without complaint and, indeed, told McFarlane that the response Plaintiff submitted to the Draft Report "included all the evidence that I [Plaintiff] found pertinent." A-186 ¶ 182; *see generally* A-184-87 ¶¶ 175-183.[14]

- Plaintiff claims that he was "denied any meaningful right to question his accuser." App. Br. at 37; *see also id.* at 4, 8, 13. But Plaintiff, like Jane, was given the opportunity to suggest questions for the Adjudicator to ask and neither party was permitted to ask questions of each other or witnesses directly. A-195 ¶ 208. This was not a procedural error but in fact fully consistent with NYU's Procedures at that time, which did not permit direct questioning by the parties. SA-357;[15] *see Colgate Univ.*, 760 F. App'x at 33 (summary order) (rejecting plaintiff's argument about his inability to

---

[14] To the extent Plaintiff requested additional time to review and respond to the Draft Report, NYU granted his requests. *See* A-184 ¶ 177; A-186 ¶ 181.

[15] The Department of Education did not promulgate regulations requiring schools to permit the direct cross-examination of witnesses in sexual misconduct proceedings under Title IX until 2020. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026, 30,577 (May 19, 2020).

32

cross-examine the complainants when he "could have challenged the complainants' testimony (admittedly in limited fashion) by submitting questions to [the hearing chair]" and noting that the procedure did not discriminate against him because "[j]ust as John Doe was barred from directly cross-examining the complainants, they were barred from cross-examining him" (alterations added)).

- Plaintiff claims that "[t]he University failed to call witnesses [he] asked to be present, failing even to interview the witnesses." App. Br. at 8; *see also id.* at 13, 30. As an initial matter, one of the three third-party witnesses interviewed by NYU was suggested by Plaintiff. A-183 ¶ 174. Moreover, Plaintiff did not specifically request that NYU interview any additional witnesses; rather, he stated in his response to the Draft Report that his mother and two individuals from his prior university had information about his relationship with Jane prior to his enrollment at NYU. A-187 ¶ 184. Investigators properly exercised their discretion under the Procedures and determined the proffered information was not "relevant and pertinent" to Jane's complaint against Plaintiff, which related to conduct that occurred several months after he transferred. A-188-89 ¶¶ 186-87; *see* SA-353-54 (providing NYU discretion during investigations), SA-356 (providing NYU discretion during hearings).

33

3. There is overwhelming evidence that Plaintiff violated the policy.

Finally, even if Plaintiff could show that NYU "conducted its disciplinary proceedings in a less-than-flawless manner," this would be insufficient to sustain his Title IX claim given the overwhelming, undisputed evidence that Plaintiff violated the Policy and NCO, including Plaintiff's own admissions during the University's Investigation and Hearing, video and audio recordings, photographs, and the hundreds of threatening messages Plaintiff sent to Jane. *See St. John's Univ.*, 91 F.4th at 654 ("[A]lleged 'procedural errors are not inevitably a sign of sex bias.'" (alteration added) (quoting *Stonehill Coll.*, 55 F.4th at 334)); *Yusuf*, 35 F.3d at 715 ("We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming . . . ."); *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018) (Plaintiff "admitted the underlying conduct. That conduct met the school's definition of stalking. Stalking was punishable by suspension under the Code of Conduct. It's as simple as that.").

For example, there was undisputed evidence that Plaintiff sent countless messages and left voicemails in which he blackmailed, threatened, and harassed Jane. *See, e.g.*, A-136-39 ¶¶ 54-58; A-140-41 ¶¶ 60-62; A-144-47 ¶¶ 71-77; A-150-51 ¶¶ 85-88; A-153 ¶ 94; A-155 ¶ 97; A-159-60 ¶¶ 106-08; A-161-63 ¶¶ 110-13. He consistently threatened to harm himself or to contact Jane's parents or friends if

34

Jane did not do what Plaintiff wanted. *See* A-144-47 ¶¶ 71-77; A-159-60 ¶¶ 106-08; A-161-63 ¶¶ 110-113.

There was also video evidence of encounters between Plaintiff and Jane. In one such encounter, Plaintiff tells Jane "I'm not leaving you alone unless you promise to talk to me . . . You have to choose, you're either gonna talk to me or you're gonna—," at which point, Jane interrupted by crying. A-149-50 ¶ 83.

Plaintiff's own messages also confirm NYU's finding of sexual exploitation. After Jane discovered that he had taken pictures of her while she was sleeping without her consent, he apologized for taking the pictures and admitted: "I SAW YOUR SHIRT WAS OFF . . . AND I WANTED TO PLEASURE MYSELF . . . AND I TOOK A PIC." A-139 ¶ 59.

Indeed, Plaintiff concedes in his appellate brief that he violated the NCO *several* times and admitted these violations to NYU. App. Br. at 11, 35-36; *see* A-164-66 ¶¶ 118, 120-21, 123-24 (describing Plaintiff's violations of the NCO, including his statement during the Hearing: "I'm not going to even try and deny it. I violated the no-contact directive there directly . . . I didn't know how to deal with it. I honestly still don't know how to deal with it."); A-170 ¶ 134; *see also* App. Br. at 35-36 ("Mr. Doe never pretended to be blameless," and "did not dispute the right of the University to hold him accountable.").

Plaintiff spends much of his brief discussing his relationship with Jane and attempting to place blame on Jane for her role in the relationship. *See, e.g.*, App. Br. at 4, 9-11, 15, 18, 23-26, 33-34. But these arguments are irrelevant as to whether Plaintiff's conduct violated the Policy, much less whether NYU committed sex discrimination. *See St. John's Univ.*, 91 F.4th at 647 ("[O]ur focus is on the decisions made and related actions taken by university officials . . . ." (alteration added)). Plaintiff's argument that NYU's determination means that "any break-up between lovers at the University suddenly becomes fair game for an investigation of a Title IX violation," *see* App. Br. at 33, is misguided. NYU did not discipline Plaintiff because of his break-up with Jane. NYU disciplined Plaintiff because he "engaged in an extended pattern of conduct that would cause a reasonable person in the position of [Jane] to experience fear for their safety, substantial emotional distress, significant mental suffering, and anguish," in violation of the Policy. A-204 ¶ 235.[16]

---

[16] Plaintiff complains that NYU did not sufficiently question Jane's credibility or "critically . . . evaluate her claims." App. Br. at 34-35. Not only does this argument ignore the uncontroverted evidence that Plaintiff violated the Policy and NCO, *see supra*, but if NYU had blindly credited Jane's account, Plaintiff would have been found responsible for sexual assault, which he was not. *See* A-204 ¶ 236.

In sum, the District Court properly granted summary judgment to NYU on Plaintiff's Title IX claims.[17]  Plaintiff failed to produce either direct or circumstantial evidence of gender bias, as is required for his Title IX claims.  Plaintiff also has not identified any procedural errors, much less procedural errors that cast articulable doubt on the merits of NYU's Decision.  It is indisputable that Plaintiff violated NYU's Policy and NCO; he was sanctioned by NYU because of his conduct, not his gender.

## II.  **The District Court Properly Dismissed Plaintiff's Promissory Estoppel Claim**

Plaintiff's promissory estoppel claim is based on the allegation that a respondent-facilitator from NYU, Allen McFarlane, told Plaintiff that "there were no circumstances in which he would be expelled" (the "Alleged Statement").  App. Br. at 40.  The District Court granted NYU summary judgment on this claim. A-251-53.

A promissory estoppel claim brought in New York has three elements: (1) "a clear and unambiguous promise," (2) "a reasonable and foreseeable reliance by the party to whom the promise is made," and (3) "an injury sustained by the party

---

[17] Plaintiff has abandoned his NYCHRL claim by failing to argue this claim on appeal.  *See Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021) ("Arguments not raised on appeal are deemed abandoned and need not be reviewed by this Court.").  Even if Plaintiff had preserved this claim, the District Court correctly held it is "indistinguishable" from Plaintiff's Title IX claims and should be dismissed for the same reasons. A-251.

asserting the estoppel by reason of the reliance." *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (citation omitted). Plaintiff's claim fails to satisfy these elements.[18]

### A. Plaintiff Did Not Reasonably Rely on the Alleged Statement

The District Court granted summary judgment to NYU because, even assuming *arguendo* the other elements of a promissory estoppel claim, Plaintiff cannot demonstrate reasonable reliance. A-252-53. The District Court was correct and Plaintiff's arguments on appeal are wrong on both the law and facts.

On the law, Plaintiff's assertion (without citation) that "[t]he standard here is Mr. Doe's state of mind," *see* App. Br. at 39, is flatly wrong. The standard for reasonable reliance under New York law is *not* a plaintiff's subjective state of mind, but whether reliance was *objectively* reasonable and foreseeable. *See e.g., Bethel v. N.Y.C. Transit Auth.*, 92 N.Y.2d 348, 353 (1998) (describing reasonable person standard as "objective"); *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 193 (2d Cir. 2021) (same).

Additionally, Plaintiff's discussion of two criminal cases that address the Sixth Amendment's right to counsel in the context of a plea bargain has no bearing

---

[18] The three elements are not entirely discrete or rigidly applied. For example, if a statement is not a clear and unambiguous promise, it is not reasonable to rely on it, which falls under both the first and second elements. Similarly, if a promisee does not rely on a promise, there can be no injury by reason of reliance, which falls under both the second and third elements.

here. *See* App. Br. at 41-43 (first citing *Lafler v. Cooper*, 566 U.S. 156 (2012); and then citing *Missouri v. Frye*, 566 U.S. 134 (2012)). This is not a criminal case, and the Sixth Amendment does not apply. NYU is a private university, not a state actor. *See Doe v. Oberlin Coll.*, 60 F.4th 345, 354 (6th Cir. 2023). There is no constitutionally protected right to counsel in university conduct proceedings. NYU did not offer Plaintiff a plea deal. McFarlane was not an attorney. For all of these reasons, the constitutional test for an ineffective assistance of counsel claim discussed in *Frye* and *Lafler* is wholly irrelevant.

On the facts, as the District Court correctly observed, Plaintiff (and his mother) were informed several times, through several sources, that expulsion was a potential consequence of the investigation. *See* A-252. Specifically, on April 30, 2018, Signor and Maeder told Plaintiff during a meeting that the sanctions for violating the Policy included expulsion. A-168 ¶¶ 128-29. On May 22, 2018, Hodge emailed Plaintiff a copy of NYU's Policy, which states that students found responsible for violations are "subject to disciplinary action, up to and including separation from NYU." A-175-76 ¶ 148; A-127 ¶ 27. Plaintiff (and his mother) reviewed the Policy. A-175-76 ¶ 148. On October 29, 2018, Maeder sent an email to Plaintiff and Jane with the Hearing date and that email "stated that one of '[t]he potential sanctions' was 'Dismissal from NYU.'" A-190 ¶ 192. Further, Signor told Plaintiff's mother in May 2018 that Plaintiff could be expelled. A-175 ¶ 147. In

other words, Plaintiff was well-aware that he was facing serious consequences, including expulsion, as he (and his mother) admitted in various messages. A-169 ¶ 132; A-184-85 ¶ 178; A-192-93 ¶¶ 197-99.

Moreover, Plaintiff admitted that he "understood that his advisor 'would [not] play a role in making . . . a determination on the facts of the case' nor would his advisor 'make a determination on the sanctions.'" A-176-77 ¶ 151. In other words, Plaintiff knew that McFarlane could not "promise" that Plaintiff would not be expelled because McFarlane had no role in making that decision. As the District Court correctly held, "[a] person cannot reasonably rely on a promise made by someone who has no authority to make the promise or any ability to keep it." A-253 (citing *Oppman v. IRMC Holdings, Inc.*, No. 600929/2006, 14 Misc.3d 1219(A), 836 N.Y.S.2d 494 (Sup. Ct. N.Y. Cnty. Jan. 23, 2007)); *see Knight Sec., L.P. v. Fiduciary Tr. Co.*, 5 A.D.3d 172, 174-75 (1st Dep't 2004) (holding it would not be reasonable or foreseeable for plaintiff to rely on a promise about the future actions of an entity made by a third party that did not control that entity); *Chem. Bank v. City of Jamestown,* 122 A.D.2d 530, 531 (4th Dep't 1986) (holding that where plaintiff knew future event to be beyond defendants' power to ensure, "[w]hat plaintiff sought and received . . . were mere expressions of opinion which cannot form the basis for an estoppel" (alteration added) (first citing *McAleenan v Mass. Bonding & Ins. Co.*, 232 N.Y. 199, 206 (1921); and then citing *London v. Hammel*, 32 A.D.2d 639 (2d

Dep't 1969), *rev'd on other grounds* 27 N.Y.2d 620 (1970)); *see also Star Funding, Inc. v. Tire Ctrs., LLC*, 717 F. App'x 38, 43 (2d Cir. 2017) (summary order) (affirming summary judgment dismissing promissory estoppel claim where plaintiff failed to show that actions gave rise to the appearance and belief that agent possessed authority to enter into the transaction); *Nelson v. Town of St. Johnsbury Selectboard*, 115 A.3d 423, 439 (Vt. 2015) (holding that statement by town's attorney that candidate for position of town manager could be terminated only "with cause" did not constitute a promise: "At best, the attorney was expressing his legal opinion. . . . [T]he attorney never purported to speak on behalf of the board." (alteration added)).

## B. The Cause of Plaintiff's Injury was His Misconduct, Not His Reliance on the Alleged Statement

Finally, while the District Court did not reach this issue, Plaintiff also fails to establish that the Alleged Statement, rather than his misconduct, was the proximate cause of his injury.[19] This Court may affirm on this alternative ground. *See Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016).

The third element of a promissory estoppel claim is "an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron*, 47 F.3d at 44 (citation omitted). The plaintiff must show "injury *caused by* the reliance."

---

[19] The District Court characterized Plaintiff's claim that the Alleged Statement was the cause of his expulsion as a "dubious proposition[]." A-252.

41

*Condor Funding, LLC v. 176 Broadway Owners Corp.*, 147 A.D.3d 409, 411 (1st Dep't 2017) (emphasis added) (citation omitted); *see also Silver v. Mohasco Corp.*, 94 A.D.2d 820, 822 (3d Dep't 1983) (plaintiff must allege "an injury stemming from his reliance upon a clear and unambiguous promise").

Plaintiff's alleged injury is his expulsion from NYU, which was a result of his misconduct, not his purported reliance on the Alleged Statement. As discussed above, there was overwhelming and incontrovertible evidence that Plaintiff violated multiple elements of NYU's Policy. *See supra* Point I.B.3. Plaintiff's mother, who has a law degree, A-174 ¶ 145, advised him throughout the disciplinary process and Plaintiff's Appeal – which was prepared by an attorney, A-207 ¶ 245 – fails to raise articulable doubt as to the outcome of Plaintiff's disciplinary proceedings. *See* D. Ct. Dkt. Nos. 98-16 – 98-19 (Plaintiff's appeal to NYU). In other words, Plaintiff's promissory estoppel argument fails because his alleged injury – his expulsion from NYU – did not result from his reliance on the Alleged Statement, but rather from his own misconduct. *See Long v. Marubeni Am. Corp.*, No. 05 Civ. 0639(GEL), 2006 WL 1716878, at *2 (S.D.N.Y. June 20, 2006) (rejecting promissory estoppel claim where "alleged injuries did not result from plaintiffs' reliance on a promise" but rather "from defendant's alleged unlawful conduct").

Indeed, it is highly speculative to think that Plaintiff would have or could have done anything to change the outcome of NYU's disciplinary process were it not for

the Alleged Statement. Plaintiff's own brief only goes as far as claiming that but for the Alleged Statement he "*may well* have chosen to forego the semester abroad, to retain counsel, and to launch a more fulsome attack on [Jane's] claims, including the filing of his foregone complaint against her." App. Br. at 40-41 (emphasis added).

However, to sustain his claim for promissory estoppel, Plaintiff must show that the actions he took (or failed to take) after the Alleged Statement were "'unequivocally referable' to the alleged promise." *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 444 (S.D.N.Y. 2006) (quoting *Ripple's of Clearview, Inc. v. Le Havre Assocs.*, 88 A.D.2d 120, 123 (2d Dep't 1982)); *see also Wooley v. Stewart*, 222 N.Y. 347 (1918). "It is not sufficient that the oral agreement gives significance to the plaintiff's actions. Rather, the actions alone must be unintelligible, or at least extraordinary, and explainable only with reference to the oral agreement. In sum, the plaintiff's actions must be inconsistent with any other explanation." *MacKay v. Paesano*, No. 68232-14, 58 Misc. 3d 1222(A), at *4, 95 N.Y.S.3d 125 (Sup. Ct. Suffolk Cnty. Feb. 6, 2018) (citations omitted).

Here, before Plaintiff ever met with McFarlane, "Plaintiff's mother claimed that she decided not to 'make any other efforts to contact a lawyer to be an advisor for [Plaintiff].'" A-177 ¶ 153. Similarly, Plaintiff told NYU before meeting McFarlane he did not want to file a cross-complaint, A-169 ¶ 131, and points to no evidence that he ever considered not studying abroad. *See Knight Sec.*, 5 A.D.3d at

43

175 (plaintiff did not allege it was injured "by reason of" its reliance where plaintiff had already taken the action by the time the other party made its promise). Plaintiff admitted during his deposition, he "was 'trying to defend' himself '[t]o the best of [his] abilities'" during the disciplinary process. A-190-91 ¶ 193. The fact that Plaintiff's best efforts to defend himself were unsuccessful does not give rise to a promissory estoppel claim.

In sum, Plaintiff cannot show that the outcome of the Title IX proceeding would have been any different but for the Alleged Statement, or that his actions were "unequivocally referable," *see Henneberry*, 415 F. Supp. 2d at 444 (citation omitted), "unintelligible, or at least extraordinary, and explainable only with reference to" the Alleged Statement, *see MacKay*, 58 Misc. 3d 1222(A), at *4. For these additional reasons, even if *arguendo* Plaintiff had shown reasonable reliance (which the District Court correctly held he did not), Plaintiff's promissory estoppel claim fails.[20]

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's grant of summary judgment to Defendant-Appellee, NYU, and award costs.

---

[20] If this Court affirms summary judgment on Plaintiff's Title IX and NYCHRL claims but reverses on Plaintiff's promissory estoppel claim, this Court should remand with instructions to dismiss the promissory estoppel claim without prejudice on jurisdictional grounds.

Dated: New York, New York
April 30, 2024

PILLSBURY WINTHROP SHAW
PITTMAN LLP

By: */s/* Jeffrey P. Metzler
Jeffrey P. Metzler
jeffrey.metzler@pillsburylaw.com
Max A. Winograd
max.winograd@pillsburylaw.com
31 West 52nd Street
New York, NY 10019
Telephone: +1 (212) 858-1000
Facsimile: +1 (212) 858-1500
*Attorneys for Defendant-Appellee*
*New York University*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I hereby certify that:

1.      This document complies with the type volume limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,689 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Microsoft Word 2013 in 14-point Times New Roman font.

April 30, 2024

/s/ Jeffrey P. Metzler
Jeffrey P. Metzler

46